INDUSTRIAL COTTON MILLS COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92186.   Promulgated December 19, 1940.

*Joseph B. Brennan, Esq.,* and *Hilary H. Gardner, C. P. A.,* for the petitioner.

*F. L. Van Haaften, Esq.,* for the respondent.

#### OPINION.

TYSON: The respondent has determined an income tax deficiency for the year 1934, in the amount of $2,251.99, resulting from his disallowance of a deduction of $16,378.09 based upon his determination that such amount represented the excess over $2,000 of a capital loss sustained upon petitioner's disposition of certain machinery and equipment in 1934.

The petitioner assigns error in such determination and alleges that instead of limiting the deduction to $2,000 the respondent should have allowed a deduction of the full amount of $18,378.09 as a loss sustained through the loss of useful value of the capital assets alleged to have been discarded and disposed of at salvage value during that year.

For the purposes of this proceeding, the parties have stipulated the facts as to the items of machinery and equipment involved herein, the time of acquisition and cost thereof, the depreciation sustained thereon, the amount received upon the disposition thereof in 1934

and that a loss was sustained by petitioner on such assets in the amount of $18,378.09 during the taxable year 1934. Such stipulated facts are incorporated herein by reference and need not be set out in full.

The petitioner is a Virginia corporation, having its principal office in Rock Hill, South Carolina. Since its organization in 1921, and including the taxable year 1934, petitioner has been engaged in the business of manufacturing denim, a heavy dyed cotton fabric used for overalls and work garments of various kinds. The manufacture of denim is the most competitive branch of the textile industry and there were only eight concerns, including petitioner, in the United States engaged in its manufacture.

In 1925, at a cost of $15,690.61, petitioner installed a steam plant, consisting of three Lombard vertical boilers with the necessary foundations, pumps, pipes, and fittings, for the purpose of furnishing steam required in the sizing department, the dye house, the finishing room, and in heating the mill. That steam plant had a normal useful life of 20 years when installed.

By 1932 a number of petitioner's competitors were producing preshrunk denim by the use of a newly patented Sanforizing process controlled by Cluett, Peabody & Co., which, through advertising, had created a nation-wide demand for preshrunk cotton cloth. In order to meet the competition of other textile mills, the petitioner installed Sanforizing machinery in 1932. Cluett, Peabody & Co. made periodic checks on all users of the Sanforizing process and it was found that petitioner's low pressure steam plant could not produce the amount of steam pressure required to secure the proper shrinkage. That circumstance required the installation of a new high pressure steam plant, which was completed and put into service during 1934. Thereupon the machinery and equipment of the old steam plant was of no further use to petitioner, or any other textile mill using the Sanforizing process and was permanently discarded from use in 1934, at which time the depreciated and unrecovered cost of such machinery and equipment amounted to $9,629.92. Thereafter, and during 1934, the steam plant machinery and equipment was dismantled. The three boilers were salvaged and sold at a net price of $1,620 and the purchasers thereof removed them from petitioner's plant at their own risk and for use in connection with certain print cloth but not denim, cotton mills. The balance of the steam plant machinery and equipment, consisting of boiler foundations, pipes, fittings, and pumps, had no sale value and was junked during that year.

In 1927, at a cost of $20,036.61, petitioner installed 10 machines known as speeders, which were then the most modern machines used

in one of the last steps of the process of drawing out, paralleling, and twisting cotton fibers preparatory to spinning. Those machines had a normal useful life of 25 years when installed and were used by petitioner up to the spring of 1934. At that time petitioner completed the installation of machinery for the newly developed process known as long draft spinning, which eliminated the operations and usefulness of petitioner's 10 speeders. Long draft spinning resulted in the elimination of a good deal of machinery, power, supplies, and labor theretofore used in the old process and lowered the cost of production, so that when petitioner's competitors installed the new process of long draft spinning petitioner was compelled to do likewise to meet the competition and remain in business.

Upon installation of long draft spinning the petitioner permanently discarded from use its 10 speeders because those machines would never be of any further use to it, or any other producer of denim, or to any other kind of textile mill which hoped to remain in competition with the up-to-date mills. Those 10 speeders had a depreciated cost of $13,205.67 to petitioner when discarded in 1934 and thereafter during that year petitioner sold them to a secondhand dealer for $2,837.50.

In the instant proceeding the parties are in agreement as to the fact that petitioner's disposition, in 1934, of the speeders, boilers, and the latter's foundations, fittings, etc., resulted in a loss of $18,378.09 in that year. If the loss resulted from a sale of capital assets, it is allowable as a capital loss deduction under section 23 (j) of the Revenue Act of 1934 only to the extent of $2,000 thereof, pursuant to the limitations of section 117 (d) of that act. If, on the other hand, the loss resulted from a loss of the useful value of capital assets, that is, that the usefulness of those assets suddenly and prematurely terminated through some change in business conditions which caused such assets to be permanently discarded from use, then the loss is deductible in the full amount thereof as an ordinary loss represented by the depreciated basis less the salvage value of such assets. Section 23 (f) of the Revenue Act of 1934 and articles 23 (e)-3 and 23 (f)-1 of Regulations 86,[1] which regulations were op-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(f) LOSSES BY CORPORATIONS.—In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

ART. 23 (e)-3. *Loss of useful value.*—When, through some change in business conditions, the usefulness in the business of some or all of the capital assets is suddenly terminated, so that the taxpayer discontinues the business or discards such assets permanently from use in such business, he may claim as a loss for the year in which he takes such action the difference between the basis &ast; &ast; &ast; and the salvage value of the property. This exception to the rule requiring a sale or other disposition of property in order to establish a loss requires proof of some unforeseen cause by reason of which the property

erative during the taxable year and in all material respects are similar to the regulations under the prior Revenue Acts of 1918 to 1934, inclusive, are set out in the footnote.

The issue presented herein is, therefore, whether the entire loss of $18,378.09, or any part thereof, was sustained (1) from sales of the above mentioned capital assets, or (2) from the loss of useful value of those capital assets as to which petitioner recovered the salvage value thereof during the taxable year.

In our opinion, the record herein clearly establishes, and we conclude as an ultimate finding of fact, that the entire loss in question was sustained from a loss of useful value of capital assets, brought about by the sudden changes in business conditions which necessitated the permanent discarding of petitioner's old steam plant and 10 speeders upon petitioner's installation, in 1934, of new facilities required to meet competition and remain in business. The discarded machinery and equipment was useless to petitioner and was also useless to any other up-to-date textile mill because of the demand for Sanforized fabrics and the cut in production costs effected by the introduction of long draft spinning. The necessity for and the actual discarding of the outmoded machinery and equipment prior to the termination of its normal useful life was the direct cause of petitioner's loss, which would have been the full depreciated cost thereof if there had been no salvage value, as was true with respect to the boiler foundations, fittings, etc., of the dismantled steam plant. The sale price of $1,620 for the three boilers represented a comparatively small recovery on the dismantled steam plant, which had a depreciated cost of $9,629.92 to petitioner in 1934. Likewise, the sale of the 10 speeders to a secondhand dealer for $2,837.50 represented a comparatively small recovery on those machines, which had a depreciated cost of $13,205.67 to petitioner in 1934. Those sales were incidental to the discarding of the steam plant and speeders and resulted in petitioner's recovery of the salvage value thereof, which salvage value diminished the amount of the loss that would have otherwise been sustained.

---

has been prematurely discarded, as, for example, where an increase in the cost or change in the manufacture of any product makes it necessary to abandon such manufacture, to which special machinery is exclusively devoted, or where new legislation directly or indirectly makes the continued profitable use of the property impossible. This exception does not extend to a case where the useful life of property terminates solely as a result of those gradual processes for which depreciation allowances are authorized. It does not apply to inventories or to other than capital assets. The exception applies to buildings only when they are permanently abandoned or permanently devoted to a radically different use, and to machinery only when its use as such is permanently abandoned. Any loss to be deductible under this exception must be fully explained in the return of income. The limitations provided in section 117 with respect to the sale or exchange of capital assets have no application to losses due to the discarding of capital assets.

\*  \*  \*  \*  \*  \*  \*

Art. 23 (f)–1. *Losses by corporations.*—\* \* \* The provisions of articles \* \* \* 23 (e)–3. \* \* \* are in general applicable to corporations as well as individuals.

We hold that petitioner's loss, in the entire amount of $18,378.09, was sustained in 1934 from a loss of useful value of discarded capital assets and that the full amount thereof is an allowable deduction for that taxable year, under section 23 (f) of the Revenue Act of 1934 and articles 23 (e)–3 and 23 (f)–1 of Regulations 86, *supra*. *Monroe Cotton Mills*, 6 B. T. A. 172, and *Horn & Hardart Baking Co.*, 20 B. T. A. 486. Cf. *U. S. Cartridge Co.* v. *United States*, 284 U. S. 511; *Illinois Pipe Line Co.*, 37 B. T. A. 1070; *Rising Sun Brewing Co.*, 22 B. T. A. 826; *Texas Chemical Co.*, 11 B. T. A. 390; *Winter Garden, Inc.*, 10 B. T. A. 71; *Peoples Ice & Cold Storage Co.*, 10 B. T. A. 16; *Celluloid Co.*, 9 B. T. A. 989; and *Levine Brothers Co.*, 5 B. T. A. 689.

The respondent erred in his determination.

Reviewed by the Board.

*Decision will be entered under Rule 50.*